UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO SEVERINO-ZUNIGA,<br><br>         Petitioner,<br><br>v.<br><br>ATTORNEY GENERAL, et al.<br><br>         Respondents. | Case No.: 17-cv-0529-AJB-KSC<br><br>**[AMENDED] ORDER DENYING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Doc. No. 8) |

Presently before the Court is Petitioner Armando Severino-Zuniga's ("Zuniga") amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed on August 3, 2017. (Doc. No. 8.) Thereafter, on August 25, 2017, Respondents filed their return to the petition. (Doc. No. 11.) As will be explained more fully below, the Court **DENIES** Zuniga's petition.

I.  **BACKGROUND**

Zuniga was born in Argentina on January 16, 1971, and is a citizen and national of Argentina as well as Peru. (Doc. No. 8 at 2; Doc. No. 11-1 at 12, 18, 24.)[1] Zuniga has an Argentinian passport that does not expire until 2024. (Doc. No. 11-1 at 19.) In 1996, Zuniga

---

[1] Page numbers refer to the CM/ECF page number and not the number on the original document.

entered the United States on a tourist visa and married his wife in 1997. (Doc. No. 8 at 2.) Zuniga and his wife have two U.S. citizen children. (*Id*.)

In 1998, Zuniga sustained a conviction for DUI in Contra Costa County, California and in 2001 he suffered a second conviction for simple battery. (*Id*.; Doc. No. 11-1 at 26.) In 2002, he was placed in removal proceedings and ordered removed to Peru or Argentina. (Doc. No. 11 at 2; Doc. No. 11-1 at 3.) Thereafter, Zuniga failed to appear to two proceedings regarding his removal and was thus removed to Argentina on April 25, 2003. (Doc. No. 11-1 at 5, 7, 15.)

On December 15, 2012, Zuniga attempted to enter into the United States 5.5 miles west of the Hidalgo, Texas Port of Entry. (*Id*. at 13; Doc. No. 11 at 2.) Zuniga's previous removal was then reinstated, and he was ordered removed on December 16, 2012. (Doc. No. 11-1 at 15–16.)

On March 15, 2016, Zuniga presented himself to authorities at the Otay Mesa Port of Entry and requested permission to transit the United States to pick up his children and wife and then proceed to Canada. (Doc. No. 8 at 3; Doc. No. 11 at 2.) Zuniga further informed the Port of Entry officers that he had left Argentina a month earlier because he sued the mayor of La Plata, Pablo Obrerra and when that information became public, he was approached by two men with a gun. (Doc. No. 8 at 3; Doc. No. 8-1 at 3.)

Based on his fear of persecution, Zuniga was detained and placed in removal proceedings before an immigration judge. (Doc. No. 8 at 3.) During this hearing, held on June 28, 2016, Zuniga withdrew his request for admission into the United States and he was ordered removed to Canada, Peru, and then Argentina in that order. (*Id*.; Doc. No. 11-1 at 55–59.)

> JUDGE TO MR. ZUNIGA
> Okay. What the Government lawyer said is if you're requesting to withdraw your request for admission into the United States, if that's granted, that they would attempt to return you to Canada. If Canada does not accept you, as an alternative the next country would be Peru. If they don't accept you then the next country would be Argentina.

| | |
|---|---|
| 1 | MR. ZUNIGA TO JUDGE |
| | That's fine. |
| 2 | MR. WATT TO JUDGE |
| 3 | That's fine. As long as he knows that if Canada does not accept |
| 4 | him, then we're going to look to either Peru or Argentina to remove him to. |
| 5 | JUDGE TO MR. WATT |
| | But the order would be Canada, Peru, Argentina. |
| 6 | MR. WATT TO JUDGE |
| 7 | That's fine. |
| 8 | JUDGE TO MR. ZUNIGA |
| | Are you okay with that, sir? |
| 9 | MR. ZUNIGA TO JUDGE. |
| 10 | Yes. |
| | JUDGE TO MR. ZUNIGA |
| 11 | So, is everything clear? Do you understand what we're talking |
| 12 | about? I'm willing to do that, as long as you're satisfied it's clear, and that's what you want to do. |
| 13 | MR. ZUNIGA TO JUDGE |
| | Yes. I sent a request to ICE asking for that and I have [sic] copy |
| 14 | here. |
| 15 | JUDGE TO MR. ZUNIGA |
| | Okay. |
| 16 | |

(Doc. No. 11 at 3; Doc. No. 11-1 at 57–58.) Despite waiving appeal, Zuniga moved to reopen to present an asylum claim. (Doc. No. 8 at 3.) This motion was denied on October 6, 2016, and the BIA dismissed the appeal on March 15, 2017. (*Id*.)

On August 3, 2016, Immigration and Customs Enforcement ("ICE") escorted Zuniga on a flight to Argentina, but he fell ill during the flight and was returned to San Diego. (*Id*.; Doc. No. 11 at 4.) On September 7, 2016, the Canadian Consulate sent Zuniga a letter informing him that his application for asylum had been denied. (Doc. No. 11-1 at 67.) Subsequently, on September 21, 2016, Zuniga filed another motion to reopen his removal proceedings so that he could apply for asylum in the United States, which was denied on October 6, 2016, with the BIA upholding the decision. (Doc. No. 11 at 4.) Further, on January 20, 2017, Zuniga filed a petition for review with the Ninth Circuit in regards to ICE's alleged efforts to remove him to countries that failed to follow the sequence set up

by the IJ. (*Id.*) Through this petition, Zuniga obtained a temporary stay of removal. (*Id.*) However, on June 13, 2017, this appeal was dismissed and the stay of removal terminated on August 7, 2017. (*Id.*)

Subsequent filings by Zuniga include a bond hearing held on December 1, 2016, Zuniga's appeal to the BIA of his first and third bond decisions that were ultimately upheld by the BIA on April 5, 2017, and the IJ's denial of his request for another bond redetermination on May 24, 2017. (Doc. No. 11 at 5.) Further, Zuniga filed a second petition for review with the Ninth Circuit on April 3, 3017, and obtained a second temporary stay of removal. (*Id.* at 4.) This stay was denied on September 15, 2017. (Doc. No. 17-1 at 2.) Thereafter, on April 13, 2017, Zuniga filed a third petition for review, which was dismissed as it was duplicative of Zuniga's second petition for review. (*Id.*; Doc. No. 8 at 4; Doc. No. 11-1 at 145.) There is no temporary stay of removal in effect in connection with this petition. (Doc. No. 11 at 4.)

## II. PROCEDURAL BACKGROUND

Zuniga filed his initial petition for writ of habeas corpus on March 14, 2017. (Doc. No. 1.) Thereafter, Zuniga's case was dismissed without prejudice for failure to pay the $5.00 fee. (Doc. No. 2.) Zuniga's filing fee was then received on March 30, 2017. (Doc. No. 3.) On June 23, 2017, Plaintiff filed a motion to appoint counsel, (Doc. No. 5), which was granted on July 6, 2017, (Doc. No. 6).

On August 3, 2017, Zuniga filed his amended petition for writ of habeas corpus. (Doc. No. 8.) Subsequently, on October 16, 2017, Zuniga filed an emergency motion to stay, which was granted on the same day. (Doc. Nos. 15, 16.) The next day, Respondents filed a notice of lodgment in regards to the Ninth Circuit's denial of Zuniga's stay of removal. (Doc. No. 17.) In response, on October 18, 2017, the Court filed a supplemental order that affirmed its October 16, 2017 order granting Zuniga's motion to stay. (Doc. No. 18.)

///
///

## III. LEGAL STANDARD

United States district courts may grant writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). Pursuant to § 2241, alien detainees can properly challenge "the extent of the Attorney General's authority" to detain a removable alien under the general detention statutes. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). The REAL ID Act of 2005 amended the Immigration and Nationality Act ("INA") and vests jurisdiction over final removal orders with the court of appeals. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006). The Real ID Act does not divest the district court of jurisdiction because the Act was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (citation omitted).

It is established that the district court is precluded from reviewing the Attorney General's discretionary authority. *See* 8 U.S.C. § 1226(e); *Romero-Torres v. Ashcroft*, 327 F.3d 887, 891–92 (9th Cir. 2003). However, this does not deprive a court of jurisdiction to review claims that the Attorney General's discretion was not exercised in accordance with the Constitution. *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 829–30 (9th Cir. 2002). The Court's jurisdiction is limited to reviewing whether the denial of discretionary relief involved a violation of federal law or the Constitution. *Id.* Moreover, any challenge to an IJ's discretionary determination must present a colorable, constitutional claim. *Mendez-Castro v. Mukasey*, 552 F.3d 975, 978 (9th Cir. 2009). "To be colorable in this context, the alleged violation need not be substantial, but the claim must have some possible validity." *Id.* (citation omitted).

## IV. DISCUSSION

The heart of Zuniga's petition is that his detention is beyond the reasonable detention period as stated in *Zadvydas v. Davis*, 533 U.S. 678 (2001), to effect removal. (Doc. No. 8 at 3.) Respondents retort that as Zuniga has a valid Argentinian passport, it is highly likely that ICE has the ability to repatriate Zuniga to Argentina at the conclusion of his removal

proceedings. (Doc. No. 11 at 6.) Moreover, Respondents contend that the length of Zuniga's detention is due to his own allegedly dilatory actions. (*Id.*)

A. Zuniga's Removal Order was Administratively Final in June of 2016

As a threshold issue, the Court first turns to both parties' disagreement over when Zuniga's removal order was administratively final. Zuniga argues that the removal order was administratively final at the time he waived appeal in June of 2016, whereas Respondents contend that the six-month clock began when Zuniga failed to abide by the agreed-upon terms of his order of removal, which was September 21, 2016. (Doc. No. 8 at 3; Doc. No. 11 at 7.)

> The "removal period" itself ordinarily lasts 90 days, but does not begin until the *latest* of the following: (i) The date the order of removal becomes administratively final. (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.* (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) (citing 8 U.S.C. § 1231(a)(1)(B)) (alteration in original). Under 8 C.F.R. § 1003.39 "the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." (emphasis added). Here, Zuniga waived his right to appeal on June 28, 2016, thus the IJ's decision became final on this date. (Doc. No. 11-1 at 43, 59.) Accordingly, the 90-day removal period in this case expired at the end of September 2016 and the six-month reasonable detention period permitted under *Zadvydas* ended in December of 2016.[2]

B. Zuniga Has Not Met His Burden to Show That There is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

Now turning to the merits of Zuniga's petition, he argues that this Court must order

---

[2] The Court previously stated that the six-month reasonable detention period permitted under *Zadvydas* ended in March of 2017.

6

17-cv-0529-AJB-KSC

he be released from Respondents' custody under appropriate conditions of supervision as he has been detained for a period that is reasonably unnecessary. (Doc. No. 8 at 5.) In opposition, Respondents highlight that Zuniga has been afforded timely IJ custody reviews and that his detention in the United States is not indefinite and has an eventual endpoint. (Doc. No. 11 at 6.)

Zuniga's petition relies solely on the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court reviewed two separate habeas petitions from resident aliens who had been ordered removed and who were held in custody by INS beyond the 90-day removal period. 533 U.S. at 684–86. Reasoning that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," and that Congress cannot authorize indefinite detention, the Supreme Court interpreted the statute to permit detention only while removal remained "reasonably foreseeable." *Id*. at 690, 699. Moreover, the Supreme Court held that:

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

Although, *Zadvydas* dealt with the detention of aliens who had been admitted to the United States, the Court finds that the case still remains instructive to the present matter. *See Clark v. Martinez*, 543 U.S. 371, 377–78 (2005) (holding that *Zadvydas* applied to all categories of aliens who were detained including "those ordered removed who are inadmissible," because the phrase "may be detained beyond the removal period" has to be

interpreted to apply to all categories of aliens under § 1231(a)(6)). Thus, applying the law to the facts of this case, the Court concludes that Zuniga's continued detention is not unreasonable and is authorized by statute.

First, the Court notes that Zuniga is correct that he has now been held in detention for well over a year despite fully complying with his obligations to assist Respondents in obtaining a travel document. However, what Zuniga disregards is the various appeals and petitions he has filed that has prolonged his detention. Beginning in September 21, 2016, the time in which the 6-month reasonableness period of detainment under *Zadvydas* was ending, Zuniga filed a motion to reopen his removal proceedings so that he could seek asylum in the United States. (Doc. No. 11 at 4.) In October of 2016, the IJ denied Zuniga's motion to reopen and the BIA upheld the IJ's decision. (*Id*.; Doc. No. 11-1 at 71–74.) Zuniga then appealed the BIA's order on October 24, 2016, but on March 15, 2017, the BIA dismissed the appeal as untimely noting that Zuniga had waived his right to appeal at the June 28, 2016 hearing. (Doc. No. 11 at 4; Doc. No. 11-1 at 136.)

Three months later, in January of 2017, Zuniga filed a petition for review before the Ninth Circuit and obtained a temporary stay of removal. (Doc. No. 11 at 4.) Thereafter, on April 3, 2017, Zuniga filed another petition for review with the Ninth Circuit and obtained a second temporary stay of removal. (*Id*.; Doc. No. 11-1 at 141.) Furthermore, in December of 2016 and January 30, 2017, Zuniga was denied bond and bond re-determination. (Doc. No. 11 at 5; Doc. No. 11-1 at 83.) Zuniga then appealed to the BIA regarding these bond decisions and on April 5, 2017, the BIA upheld both decisions. (Doc. No. 11 at 5; Doc. No. 11-1 at 142.) On March 8, 2017, Zuniga received a bond redetermination hearing where the IJ set bond at $20,000. (Doc. No. 11 at 5.) Zuniga appealed to the BIA and it appears that this appeal remains pending. (*Id*.)

Based on the foregoing, it is clearly evident to the Court that despite Zuniga's various arguments, the delay in his removal directly correlates with the various petitions and appeals he has pursued during his review process. Thus, Zuniga has played a part in his own continued detention. *See Kumar v. Gonzales*, 555 F. Supp. 2d 1061, 1065 (N.D. Cal.

2008) ("While Petitioner is entitled to seek judicial review of the BIA's decision to deny him asylum and should not be penalized for exercising his rights, he cannot simultaneously take steps to prevent his removal while seeking a writ of habeas corpus on the basis that he has not yet been removed."); *see also Martinez v. Gonzales*, 504 F. Supp. 2d 887, 898 (C.D. Cal. 2007) ("When an alien petitions for judicial review of a removal order, it is virtually certain that his or her appeal will delay removal by some period of time even if it does not succeed in preventing it . . . ."); *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.").

Second, and most important for purposes of Zuniga's petition, is that Zuniga has not established that there is no significant likelihood that he will be removed in the reasonably foreseeable future. *See id.* at 1059 ("*Zadvydas* places the burden on the alien to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'").[3] Zuniga argues generally that "the lapse of the reasonable period to effect removal indicates there is no significant likelihood that any of the three listed destinations will grant [him] repatriation in the reasonably foreseeable future." (Doc. No. 8 at 6.) Additionally, he states in a conclusory manner that Respondents' failure to remove him demonstrates that he will not be removed in the reasonably foreseeable future. (*Id.*) However, the Court finds that these broad allegations overlook the fact that Zuniga's judicial and administrative review processes have been constant and ongoing and thus his removal has been delayed. Similarly, the Court concludes that the evidence produced by Zuniga does not establish that the period of his detention is no longer practically attainable or that the detention at issue is indefinite or potentially permanent. *See Prieto-Romero*, 534 F.3d at 1063

---

[3] The Court notes that Zuniga's Traverse argues that "Respondents adduce no evidence to excuse their failure to comply with *Zadvydas* and their own regulatory procedures." (Doc. No. 14 at 4.) However, based on *Pelich*, this is not Respondents' burden.

("Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a 'removable-but-unremovable limbo[.]'").

Even if Zuniga had demonstrated that his removal was not reasonably foreseeable, Respondents have provided evidence sufficient to rebut that showing. Namely that Zuniga has a valid Argentinian passport. (Doc. No. 11 at 6.) Additionally, removal actually seems quite imminent based on the fact that Zuniga had to file an emergency motion to stay on October 16, 2017, stating that his deportation officer informed him that he would be sent "downtown" and then processed for removal to Argentina. (Doc. No. 15-1 at 2.) Accordingly, based on the record, there seems to be an eventual endpoint to Zuniga's detention. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1300 (9th Cir. 2004) ("Since *Zadvydas* came down, the Supreme Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future.").

The Court finds the following cases further supports its conclusion. In *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), the court found that Prieto-Romero did not demonstrate that he was unremovable because the destination country would not accept him. *Id*. at 1063. Instead, the court found that the government introduced evidence showing that repatriations to Prieto-Romero's country of origin were routine and that the government stood ready to remove Prieto-Romero to his country of origin. *Id*. Additionally, in *Kumar v. Gonzales*, 555 F. Supp. 2d 1061 (N.D. Cal. 2008), the court found that despite the petitioner being in ICE custody for nearly a year, he had not shown that there was no significant likelihood of his removal in the reasonably foreseeable future. *Id*. at 1065. The court specifically looked at the fact that it was very likely that the petitioner would be removed once the Ninth Circuit ruled on his petition for judicial review, that ICE was in possession of valid travel documents and would have removed him already had it not been for the stay of removal, and that the delay in the petitioner's removal was his own making. *Id*. Similar to both *Romero* and *Kumar*, Zuniga has a valid Argentinian passport,

Respondents contend that he would have been removed earlier if it wasn't for the Ninth Circuit's temporary stay that was only just denied in September of this year, and that Zuniga has been actively seeking judicial review with the Ninth Circuit and the BIA.

Based on the foregoing, the Court concludes that Zuniga has failed to show that there is "no significant likelihood of removal in the reasonably foreseeable future" and thus his detention remains statutorily authorized. *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) (citing *Zadvydas*, 533 U.S. at 689, 699–700).

C.     Remaining Arguments

Zuniga's petition briefly points to the fact that his removal to Argentina is complicated by ICE having made a credible fear determination that his return to Argentina would be dangerous. (Doc. No. 8 at 6.) In Zuniga's traverse, he clarifies that his petition does not seek to attack the underlying removal order, but only seeks to enforce the order through Respondents' failure to abide by its terms. (Doc. No. 14 at 13.) Both arguments presented by Zuniga hold little weight. First, as this Order will deny Zuniga's petition, his contentions about enforcing the removal order are meritless. Second, the Court notes that Zuniga's fear of returning to Argentina is not a topic for which this Court has jurisdiction to review. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("[N]o court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to *commence proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter.") (citing 8 U.S.C. § 1252(g) (emphasis added)).[4]

On a final note, Zuniga's traverse argues that principles of equity support the view

---

[4] The Court notes that in Zuniga's Traverse he makes several arguments regarding his credible fear of returning to Argentina, as well as Respondents' failure to first remove him to Canada and Peru. (*See generally* Doc. No. 14.) Overall, the Court finds it difficult to see how these arguments are relevant to Zuniga's petition. The issue as presented by Zuniga is the length of his custody; thus where Zuniga will be removed to is irrelevant to the matter at hand. *See* 28 U.S.C. 2241(c)(3) (authorizing any person to claim in federal court that he or she is being held "in custody in violation of the Constitution or laws . . . of the United States.").

11

that Zuniga's continued detention is both unlawful and unjust. (Doc. No. 14 at 14.) The Court disagrees. Not only is the case law cited by Zuniga inapplicable,[5] but for the reasons already stated above, the Court finds that the principles of equity support the Court's finding that Zuniga's detention is reasonable.

## V. CONCLUSION

Accordingly, the Court **DENIES** Zuniga's amended petition for writ of habeas corpus. The Government will be able to remove Zuniga in the event that his petition for review of the administratively final order of removal is denied. Further, as this Court has presently issued a final order denying Zuniga's habeas petition, the stay of removal granted on October 16, 2017, is now **DENIED**. (Doc. No. 16.)

**IT IS SO ORDERED**.

Dated: December 15, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[5] Zuniga cites to *Holland. v. Florida*, 560 U.S. 631 (2010), to argue that habeas petitions are governed by "equitable principles." (Doc. No. 14 at 14.) However, *Holland* spoke about principles of equity in habeas petitions related to equitable tolling. 560 U.S. at 660. Moreover in *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008), the Supreme Court was discussing how the *Teague* rule had no "bearing on whether States could provide broader relief in their own postconviction proceedings . . . ." *Id*. at 277.